Andrew Guilford of Alston & Byrd on behalf of Plaintiff & Appellants, Property I.D. Corporation, and Carlos Siderman. We respectfully submit that the District Court erred in three respects in granting summary judgment in favor of defendant Greenwich Insurance Company. First, the District Court erred in its application of the prior or pending litigation exclusion. Second, the District Court erred in its application of the prior notice exclusion. And third, the District Court erred in its holding that Greenwich is entitled to rescind the insurance policy. Pardon me. I'd like to turn first to the prior or pending litigation exclusion. And could I ask you a question about that? Yes. You indicated in your brief that the District Court's decision depends on confusing the two companies that involved, that were involved here. Really, what are the differences between NDA and Hazards for Humanity, of course, which was never formed, for the purposes of these lawsuits, despite the fact that one was never formed? Well, in fact, Your Honor, Hazards for Humanity Inc. was formed. It was an existing California corporation and an entirely separate entity. Now, Sergio Siderman and his cohorts decided not to ultimately do business as Hazards for Humanity, Inc. And they formed a separate company called National Disclosure Authority, also a California corporation, which was incorporated on May 4, 2007, after Carlos Siderman signed the policy application for the Greenwich policy. Well, what happened to Hazards for Humanity? Hazards for Humanity went away as an idea, likely because of the allegations. Well, I can't speculate on why they never did business as Hazards for Humanity. But it was formed as a California corporation, and I assume it's been dissolved since. Thank you. Turning to the prior appending litigation exclusion, we respectfully submit that the court misapplied the exclusion in three respects. First, the prior appending litigation exclusion, read as broadly as the court read it, does not apply to the individual plaintiff's claims in the NDA litigation. In the NDA action, Ryan Hilterbrand, David Sternlight, Kina Sternlight, and Farrah Normand all alleged they were all individual plaintiffs alleging individual claims against Property ID and Carlos Siderman. Those claims have absolutely nothing to do with the cross-complaint that was filed by Sergio Siderman in the Hazards for Humanity litigation. In fact, all of those claims arise out of conduct that took place after the inception of the May 12, 2007 Greenwich policy. The defamation claims asserted by the individual plaintiffs all arise out of statements that were supposedly made in July 2007. Again, the Greenwich policy incepted in May of 2007. But the unfair competition claims were before the insurance policy was issued, were they not? And Property ID submitted notice to the other insurers before the policy began. Isn't that correct? Why doesn't this end the inquiry as to that claim? The claims that are the subject of the prior notice to the other insurance company relate to the corporate claims that were asserted in the Hazards for Humanity litigation. And the distinction here is that Property ID never submitted prior notice to any insurance company concerning the individual plaintiffs' claims in the NDA Act. But they did as to the others. And so doesn't that end the inquiry as to those? It does not, Your Honor. And why not? Let me take that in pieces if I may. First, if they did not do so with respect to the individual plaintiffs' claims, which are therefore not subject to an exclusion, then Greenwich had a duty to defend Property ID and Carlos Siderman in connection with those claims in the NDA action. And therefore had a duty to defend the entire suit? That's correct, Your Honor. Under Buss and under Horace Mann, they had a duty to defend the entire lawsuit. So even if, and we do not concede that the corporate claims asserted by NDA are subject to the exclusion, but even if they were, Greenwich still had a duty to defend the entire action because the individual plaintiffs' claims are in no fashion subject to any of the exclusions that apply here. Those claims all arise out of conduct post-inception of the Greenwich policy. Now, Greenwich in its briefing has pointed to a fifth amended cross complaint that was filed by Sergio Siderman in the Hazards for Humanity litigation, making the argument that, well, that fifth amended cross complaint references the individual plaintiffs' claims. So therefore, the two litigations are related for purposes of the exclusions. However, the fifth amended cross complaint was filed in September 2008, a full year after the NDA action was filed. It was filed nine months after this litigation was filed. The fact that a year after this matter was tendered to Greenwich, there was a filing in the Hazards for Humanity litigation that happened to reference the NDA action, does not trigger the exclusion and it does not absolve Greenwich of its duty to defend when the matter was tendered to Greenwich a year before. Your Honor, turning to the corporate claims. So did, now it's an issue of what happened to the humanity group, and I sort of thought it disappeared, but apparently it was, that litigation was being pursued a year later? Correct. There was, Property ID sued Hazards for Humanity, Inc. and Sergio Siderman. Sergio Siderman, in turn, filed an employment cross complaint against Property ID, alleging that he had all along been a Property ID employee, and that he was entitled to things like lost wages, lost profit distribution, and other damages personal to him. And therein lies a critical distinction between the allegations in the cross complaint and the corporate allegations in the NDA action. Clearly, the claims of the individual plaintiffs do not relate to the allegations in the cross complaint and the Hazards for Humanity litigation. Again, those did not arise until after inception of the Greenwich policy. But neither, the NDA corporate claims also do not relate to the allegations in the Sergio Siderman cross complaint in Hazards for Humanity. He was asserting personal claims arising out of an employment relationship, according to Mr. Siderman, that ended before the Greenwich policy incepted. Claims by NDA, the corporate claims in the NDA action, arise out of alleged post-inception acts by Property ID against NDA. NDA did not exist during the time period in which Sergio Siderman was allegedly an employee of Property ID. His employment claims arise out of conduct that allegedly occurred before NDA was ever formed. The allegations and the claims in NDA involve different wrongful acts, different time periods, different parties. Sergio Siderman doesn't hold any of the NDA claims. None of the facts giving rise to Sergio Siderman's individual employment-related claims also give rise to the claims in the NDA action. We respectfully submit that the district court erred here by seizing upon allegations that happened to be repeated in the NDA action from the Hazards for Humanity cross complaint, allegations that are extraneous to any of the claims that were asserted in the NDA action. Let me give an example. The district court noted one allegation that Carlos Siderman had reviewed Sergio Siderman's personal files relating to the formation of Hazards for Humanity, Inc. Now that allegation may have had some relevance in connection with Sergio Siderman's cross complaint, but it had no relevance and no application in connection with the NDA action. And so what the district court did was it noted the similarity and it noted a few other allegations that were equally extraneous and said the mere repetition of those allegations in the NDA action triggers the prior or pending litigation exclusion. Well, that's contrary to the case law, which says that a literal application of the prior or pending litigation exclusion cannot be made in the face of some incidental overlap in allegations. Further, this court's decision and financial management advisors noted that incidental overlap in allegations will not trigger exclusions like the exclusion that Greenwich was relying on. The district court erred by failing to strictly construe the prior or pending litigation exclusion and it erred by failing to resolve doubts in favor of property ID and Carlos Siderman. And it's important to keep in mind here, too, that this is a duty to defend case. And so what we're looking at is whether the exclusion bars any potential for coverage. It is not a coverage case. I would like to make a couple more comments. I noted the prior notice exclusion. We respectfully submit that the court erred in its application for all of the same reasons that it erred in connection with the prior or pending litigation exclusion. But one point is worth emphasizing here. The district court held that that exclusion bars all claims, even though there was no evidence that the claims of the individual plaintiffs in NDA were the subject of a prior notice. And we respectfully submit that that was error. Turning to our last point, which is that the district court erred in finding that the policy had been rescinded. We respectfully submit that the court erred for two reasons. First, there was no evidence that either property ID or Carlos Siderman had knowledge of the Sergio Siderman cross-complaint in the Hazards for Humanity litigation when the policy application was signed. Greenwich instead relies on imputed knowledge. Greenwich cites no authority from the proposition that imputed knowledge is sufficient for a finding of omission, justifying rescission of an insurance policy. Didn't the lawyer have knowledge by then? The allegation is that the lawyer had knowledge, and that was before the district court. But there was no authority establishing that in the context of a claim for rescission based on omission of an insurance policy, that imputed knowledge of a lawyer is sufficient. The cases that are cited. Well, how does a corporation get knowledge? I would think that the most likely way a corporation would get knowledge is through its counsel. Well, we need to consider what the purpose of imputing knowledge is. If the knowledge had been imputed within the context of a claim. How do you impute to a corporation? It's not to a person. It's to an entity. And a lawyer is more likely to have the relevant knowledge about a claim than some vice president. Let me speak to that, Your Honor. It's important in evaluating that to keep in mind that Carlos Siderman as an individual also insured a policy. And secondly, that Carlos Siderman is the individual that signed the policy application. But addressing imputed knowledge to a corporation for a moment, this isn't a case where they're attempting to impute knowledge to the client within the context of the litigation in which the knowledge was obtained. If they were attempting to say, look, you learned in this litigation, your lawyer learned this, and that triggered a statute of limitations, the statute expired, and you're bound by the lawyer's knowledge, that's one thing. That's not what's being asserted here. It's being asserted that you learned in connection with the litigation of the hazards matter, this information. And that knowledge is imputed to the corporation for entirely unrelated purposes, like a policy application that the lawyer may or may not have had knowledge the client was submitting. Last point on rescission, Your Honor. Well, let me just clarify this. Question 8E of the policy requested a status of any litigation filed against a proposed insured in the last 12 months. The PID plaintiffs knew about the employment cross-complaint before May 12, 2007, because their counsel informed other insurers, in fact two other insurers, of the litigation on May 7th. The failure to submit a response to question 8E affected, did it not, Greenwich's assessment of their risk. Respectfully, Your Honor, it did not. And let me tell you why. Because Greenwich was aware that it did not have that litigation summary and chose to issue the policy anyway. In June of 2007, Greenwich's underwriter sent a document entitled, Follow-up for Policy Issuance to Property ID's Broker, noting that there were certain subjectivities that had not been satisfied and that a policy would not be issued until a clean claims history was provided by the insured. Greenwich did not receive that clean claims history, and of course the litigation summary is subsumed within the clean claims history, and Greenwich nevertheless chose to issue the policy aware that it had not received that document. And the case law is clear that in that circumstance where an application is incomplete and the insurer proceeds to issue the policy despite its knowledge that the application is incomplete, the insurer waives the omission. Thank you. You've got, oh, you're a negative guy. Well, I'll save my negative time. Thank you. May it please the Court. My name is Jeffrey Ward. I'm here on behalf of Greenwich Insurance Company. This case is a straightforward application of the prior notice and prior impending litigation exclusions. These exclusions are routine in claims made policies such as the one that Greenwich issued to Property ID, and they're really part and parcel to what the key limitation is to these policies. The claims made policies' fundamental mechanism, so to speak, is that they only provide coverage for claims first made during the policy period, and the insurer is not assuming the risk for either claims that originated before the policy, especially whereas here it's the first ever policy issued by this carrier to that insured, or claims that arise after the policy. And by limiting the risk that the insurer is taking on to this discrete time period, the insurer is capable of charging a much lower premium than if the policy was more expansive. And so the prior pending litigation exclusion and the prior notice exclusion are very important parts of the claims made policy because they provide that if a claim is first made during the policy period, but that policy, but that claim, excuse me, has its origin in a pre-policy dispute. The insurer is not responsible for it. Well, let me just ask, while listening about your statement, is that the policy was issued when the application was incomplete. Is that correct? No, Your Honor. I disagree with that. It's a little more nuanced than that. All right. Continue. The policy, the application was complete, but as often happens in the underwriting process, there initially was a binder, and the prospective insured requested the policy period to begin on May 12th, I believe was the date, or maybe it was May 18th. And the application came in only shortly before that. It was dated May 3rd. Oftentimes what the company will do is they'll issue a binder and say, okay, we'll agree to provide coverage beginning on May 18th, but our underwriting process isn't done because we didn't have enough time. And so even after the beginning of the policy period, the underwriting process can continue, even though the application is complete. Here it's true that Greenwich requested some additional information, and there was that follow-up that asked for a clean claims history and, I believe, financials. However, the failure to receive the clean claims history, I would submit, did not put Greenwich on notice that there were prior claims. Well, Greenwich didn't know. Of course it didn't know. You're correct, Your Honor. Yet it issued the policy. Because if a question asks for a summary of litigation in the prior 12 years, silence reasonably would lead the underwriter to conclude that there was none, because there was no yes or no checkbox. And so if there were no litigation during the previous time period, there would be no summary provided. Significantly, however, Your Honor, the application issues are completely discreet from the exclusions. Even if the policy isn't subject to rescission, and I contend it is, but even if it's not subject to rescission, the exclusions remain. And the exclusions clearly apply here to bar coverage. And I'd like to address that in two steps. First, I'd like to address the correct standard for interpretation of these exclusions. And then second, I'd like to go on and explain why there certainly is a significant factual nexus between the pre-policy litigation and the litigation that was commenced during the policy. The California Supreme Court in the Bay City's case, which is cited in both parties' briefs, had a discussion of how to interpret exclusions in policy provisions, such as the prior notice and prior impending litigation exclusion. The court ruled that sometimes insurers use broad language, and they use broad language intentionally. And the simple fact that the language is broad does not render it ambiguous. And it held that language such as arising out of, which is contained in the exclusions at issue today, is broad and was intended to apply broadly. Now, that said, the California Supreme Court then went on to say, still, even with broad policy language like this, there could be a case, hypothetically, where the relationship between the prior lawsuit or claim and the other claim becomes too attenuated and becomes so attenuated that no reasonable insured would understand that the insurance company would consider the two claims related. Similarly, the First Circuit in the Federal v. Raytheon case, which is cited in the briefs, said similarly that even if the literal language of a prior notice or prior impending litigation exclusion applies, the court should consider whether there is a substantial overlap between the two claims on the one hand or, on the other hand, whether the overlap is simply incidental or fortuitous. But isn't it true here the district court severed the malicious prosecution causes of action because, quote, they did not arise out of the same transaction or occurrence of the unfair competition claims? So how do you respond to Appellant's argument that severance indicates that the individual claims don't have the same factual nexus? Your Honor, you're referring to the court in the underlying case, not the district court in this coverage action, correct? Yes. Frankly, I don't know exactly why the trial court in the underlying claim severed certain aspects of it. There could be a whole number of different reasons related to the orderly introduction of proof or what have you. I don't know the answer to that. But the answer in terms of the insurance coverage determination is this. All of the claims, and I shouldn't even use that word because the policy defines claim to mean the lawsuit in its entirety. All of the legal theories arise out of the same facts and circumstances that were known to the insured and that were reported to the prior carriers and that were the subject of prior litigation before the Greenwich policy's inception. This was a house on fire before Greenwich took on the risk. Before the Greenwich policy's inception, there had been this falling out between Carlos Seidermann and Sergio Seidermann. Carlos Seidermann either fired Sergio Seidermann or Sergio Seidermann quit. And they were involved in this dispute about both the propriety of the termination of Sergio Seidermann and his efforts to compete. And all of the causes of action, all of the plaintiffs, all of the legal theories have their origin in that dispute. The pleadings demonstrate that by cutting and pasting from one another. We also see the factual nexus in lots of other sense. All of the parties involved here are either the same or related. On the one hand, you have Carlos Seidermann and Property ID. On the other hand, you have Sergio Seidermann and the other former Property ID and current NDA employees who are all there involved in both of these lawsuits because of the falling out between Sergio and Carlos Seidermann. The creation of a new company to dispute, to compete with Property ID and Property ID's alleged wrongful act to quash that company. What happened to that new company? Just, excuse me, I hate it. Hazards for Humanity, what happened to it? Evidently there was a lawsuit against it a year later. I don't know the answer, Your Honor. Based on the record, it was my understanding that Hazards for Humanity was incorporated by Carlos Seidermann, I'm sorry, Sergio Seidermann at some point as a mechanism for him to compete with his father if he ever had to leave the company, but ultimately he never used that corporate form to compete. Instead, after he left Property ID, he created NDA and used that corporate form to complete. But the point for the coverage determination issue here is that all of this stuff arises out of the formation of a company, whether it's Hazards for Humanity or NDA, to compete with Property ID. And the alleged wrongful acts, including false and defamatory statements, frivolous litigation, search and seizure of private property, hacking into private computer web email files, all of this allegedly wrongful conduct was... But this wrongful conduct under Exclusion B has to be the subject of a notice given under some other insurance policy, was it? Yes, Your Honor. Prior to the inception of the Greenwich policy, Property ID gave notice of the Hazards for Humanity lawsuit and the cross-claim against it in that lawsuit. And that cross-claim alleged... When was that notice given? On May 7th. So after the application, before the effective date. Correct. And the Hazards for Humanity action alleged the end of the business relationship between the Seidermans, the creation of a company to compete with Property ID, and wrongful conduct by Property ID and Carlos Seiderman in an attempt to quash that competition. Subsequently, the NDA action, brought by separate but related plaintiffs, because they're all working together in this new enterprise to compete with Property ID, alleges some of the same wrongful acts in an attempt to quash competition and also additional wrongful acts. So if they hadn't given the notice of the cross-complaint for a few days, then this clause wouldn't apply. That's correct, Your Honor. No, actually, I'm sorry. That's not correct, because the prior notice exclusion is triggered so long as notice is provided to a prior carrier. It wouldn't matter if it happens shortly after the inception of our policy. For example, many claims-made policies have a 30-day grace period for reporting claims after the termination of the policy period. It says that notice has to be given before the inception date of the policy. If that's the case, Your Honor, then you may be right. But the fact is the notice was provided prior to the inception of the policy. I made the mistake of giving notice of the cross-complaint a few days before the inception date. Okay. And additionally, Your Honor, the prior impending litigation exclusion would be triggered in any event because the hazards for humanity are actually prevailing. Well, I'm trying to take them exclusion by exclusion. I'm sorry, Your Honor. So that's B. Then we get to E. Okay. Since your time is limited, I have one question I'd like you to answer. Yes, Your Honor. The appellants argue that even though some of the causes of action are not covered, that the insurer has a duty to defend the entire lawsuit, i.e., the malicious prosecution claims, would then require the insurance company to defend the unfair competition claims. What is your response to that? Two responses, Your Honor. First of all, if you look at the language of the policy, the exclusion bars coverage for any claim, which is a defined term arising out of facts and circumstances that were either the subject of notice to a prior insurer or were the subject of a prior impending litigation. Because the exclusion bars coverage for a claim, and claim is defined as the entire civil proceeding, the exclusion bars coverage for the whole lawsuit. It is improper under this policy to go within the lawsuit and break out the individual causes of action and say, does the exclusion apply to this one? Does the exclusion apply to that one? It applies to the whole claim. And that makes perfect sense because the point of the exclusion is that the company does not want to take the risk of a lawsuit which has its origin in a known dispute before the policy, but then later expands into a really great big problem. Again, the analogy of the house on fire. Even if the fire is little before the policy inception, but then grows into a huge conflagration, the genesis of the fire was known to everybody before the policy's inception, and so the insurer is not responsible for it. One other point I see. I only have one. Scalia. Good question. Paragraph E in the exclusion on the alternative exclusion, again, it talks about which was brought prior to the applicable pending prior proceeding date, which I gather is the – I gather that's the same date or the effective date of the policy. That also requires prior litigation brought before the policy date. That also, I assume, refers to the cross complaint? Yes, Your Honor. The pending or prior litigation would be the hazards for humanity action, and the cross complaint in that action. Cross complaint. So your entire exclusion really depends on the cross complaint. If that hadn't been filed before the effective date, you'd have to cover them. If you're talking only about exclusion E, yes, Your Honor, but it was filed before that. It would also be, because you'd have to give notice. Yes, Your Honor. That's right. The notice that was given was the cross complaint. Cross complaint. If – I never got to make my second point in response to Justice Nelson.  We'll give you the next one. If I may. In addition to the definition of claim encompassing the entire lawsuit, the fact that new issues arose in that claim was something that was addressed in the – by the First Circuit in the Federal v. Raytheon case, and I'd just like to point that out to you where, in that case, the First Circuit noted that even where only one-sixth of the allegations in the subsequent complaint were part of the initial complaint, a similar exclusion still applied. Thank you, Judge. Thank you. Just to briefly respond to counsel's comment concerning the definition of claim, two comments. First, I note that the definition is inconsistent with Buss and Horace Mann, and secondly, it's also inconsistent with the language of their own policy. Volume 3 of the record at page 372 says that if both loss covered by this policy and loss not covered by this policy are incurred either because a claim, claim being the defined term, made against the insured contains both covered and uncovered matters, in that circumstance, the insurer and the insurers will use their best efforts to allocate the coverage. So – Would you tell me where you were reading again? I'm sorry. I have 372 and – 372, section B-1. Yes. Which expressly contemplates that when a claim is made, there may need to be allocation between covered and uncovered portion. The claim is not viewed as a monolith, so that even covered portions of the claim are subject to the exclusions. Last comment is that the individual plaintiff's claims did not arise until after the inception of the Greenwich policy, and they were not the subject of a prior notice given to an insurance company, and there was no evidence in the record suggesting otherwise. Thank you, counsel. Thank you. The case discharged here will be submitted. The next case for argument is Thompson v. National Steel and Shipbuilding Company.
judges: Whaley, Nelson D. W., Reinhardt